**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEBORAH S. MEYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.  CIV-02-1691-F |
| ) | |
| THE TOWN OF BUFFALO, ) | |
| OKLAHOMA, et al. ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

This matter comes before the court on the motion of the defendant Beth Snell for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The matter has been fully briefed and upon due consideration of the parties' submissions, the court makes its determination.

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the opposing party must come forward with specific evidence demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## Nature of the Case

Viewed in the light most favorable to the plaintiff, the facts of this case are as follows. The plaintiff, Deborah S. Meyer, had been romantically involved with Mark Erwin an employee of the Town of Buffalo. The relationship ended less than amicably on or about May 10, 2001. During their relationship, Mr. Erwin told Ms. Meyer that he was a "ten man" in the Ku Klux Klan, which he told her meant that he was an "enforcer" in the organization. Erwin was frequently angry with Ms. Meyer. He also began expressing anger toward his sister, Beth Snell, and made threats against her.

On the night of Thursday, May 17, 2001, or the early hours of Friday, May 18, 2001, Ms. Meyer was physically assaulted outside her rural home when she stepped outside to investigate a noise. She stated that she was "sucker punched" in the face with great force and knocked to the ground. She alleges that her assailant was Mr. Erwin, but it is not clear when she first identified him as her attacker. She did not report the attack immediately.

In the early morning hours of May 19, 2001, Ms. Meyer telephoned the Harper County dispatcher to report trespassers on her property. When Sheriff's Deputy Josh Snider arrived, she also tried to report the attack from the previous night. Deputy Snider informed her that she would have to make her assault report in town.

On the evening of Saturday, May 19, 2001, Ms. Meyer drove into Buffalo, the county seat of Harper County, to make the report. On her way to the sheriff's office she spotted Mr. Erwin at a convenience store. She confronted him and told him to stay away from her. Ms. Meyer continued on to the sheriff's office where she attempted to make an assault report to the dispatcher who served both the county sheriff's office and the city police department. The dispatcher told her they didn't "do that" there.

Ms. Meyer then went to the home of the Buffalo police chief and informed him that the sheriff's office would not take her report. Even though Ms. Meyer's home where the attack occurred was some 18 miles out of town and so not in the jurisdiction of the Town of Buffalo, the police chief told her to go to the police station. He had an officer, defendant Steve Wheaton, meet her there. Officer Wheaton photographed Ms. Meyer's bruises and told her he would consult with the sheriff's office.

After leaving the police station, Ms. Meyer went to confront Mr. Erwin again. She drove to Wheatland Commodities, a Buffalo business owned by Mr. Erwin's sister, Beth Snell. Ms. Meyer knew that a family graduation party was being held there in honor of Mr. Erwin's niece. At Wheatland Commodities, Ms. Meyer confronted Mr. Erwin in the presence of his sister and her husband. She displayed her bruises and informed Mr. Erwin's family members that he had assaulted her. She then asked Mr. Erwin if he wanted to "finish what he'd started." She also announced that Mr. Erwin was an "enforcer" with the Ku Klux Klan and that he was planning to murder Beth Snell. Ms. Snell told Ms. Meyer that she was crazy and ordered her to leave. When Ms. Meyer refused, Ms. Snell warned that she would call for the authorities. At approximately 10:15 p.m., Ms. Snell called the sheriff's office to report that Ms. Meyer was "crazy" and refusing to leave her premises. Ms. Meyer says that she never became violent and never threatened violence during this verbal confrontation. Testifying in another proceeding, Beth Snell said that there had been no violence and no threats.

Officer Wheaton and Sheriff's Deputies Shawn Stoddard, Josh Snider, and Joe Painter arrived at the scene. Ms. Meyer was asked to wait in her vehicle and allowed Deputy Snider to escort her to her vehicle where she waited willingly and calmly while the other officers took statements from Mr. Erwin and the Snells. None of the officers attempted to take any sort of statement from Ms. Meyer or to ask her any

questions. It was decided that an emergency order of detention for psychiatric evaluation should be sought. The record is unclear as to how this decision was made and by whom. Deputies Stoddard, Snider, and Painter argue that they did not cause or contribute to the detention.

At some point, Deputy Stoddard left the scene and placed a call to Western State Psychiatric Center ("Western State"). He returned and informed Officer Wheaton that Western State staff advised that Ms. Meyer could be brought in for examination. Ms. Meyer maintains that from the time the officers arrived until they handcuffed her and took her away, a span of about one hour, she had been calm and cooperative. The unsworn "Peace Officer's Affidavit for Emergency Detention" by Officer Wheaton, which is included in the Western State records, makes no mention of any violence or threats by Ms. Meyer, or of any resistance. Officer Wheaton's written statement refers to "affidavits" of other witnesses (apparently referring to written statements given by Beth Snell, Mark Erwin, and Leon Snell, who also had been present at Wheatland Commodities) as additional sources of information to support the necessity of emergency detention, but those statements similarly make no mention of acts or threats of violence by Ms. Meyer.

Ms. Meyer was taken to Western State, where she arrived in the custody of Wheaton, Snider, and Painter just before midnight. There is considerable dispute regarding the affidavits and reports provided to Western State by the defendant officers. Ms. Meyer's medical file contains only Officer Wheaton's statement (which was styled an affidavit but not notarized), and other unsworn statements of the officers.

Despite evidence that Ms. Meyer had neither acted violently nor threatened violence and that she never resisted the defendant officers, Western State's admitting physician, Jennifer Morris, M.D., noted in her reports that Ms. Meyer had

"apparently" threatened violence and required four officers to restrain her. There is no such information in the written reports submitted by the defendant officers. A subsequent note from Dr. Morris states that she was unable to "find the entirety of the written police officer material" she reviewed in connection with Ms. Meyer's detention. Two persons on duty at Western state at the time of Ms. Meyer's admission were related to a law enforcement defendant. After examining Ms. Meyer, Dr. Morris concluded that she had "the desire to harm" Mr. Erwin and that she might do so if she were not detained until she could regain her impulse control. Ms. Meyer was admitted to Western State. She was released the following Monday May 21, two days after her admission to Western State.

Ms. Meyer filed this action against Officer Wheaton, Deputies Stoddard, Snider and Painter, the Town of Buffalo, and the Board of Commissioners of Harper County (the "Board"), pursuant to title 42, § 1983 of the U.S. Code, for violation of her rights under First, Fourth, and Fourteenth Amendments to the United States Constitution. She also brought an array of state law tort claims against those defendants as well as against Mark Erwin, Beth Snell and Crystal Stoddard, a hospital clerk. On March 3, 2004, this court entered its order granting summary judgment in favor of Steve Wheaton, the Town of Buffalo, Shawn Stoddard, Josh Snider, Tommy Painter, and the Board of County Commissioners of Harper County with respect to all of Ms. Meyer's constitutional claims. Because that order resolved all of the plaintiff's federal law claims, her state law claims against Steve Wheaton, the Town of Buffalo, Shawn Stoddard, Josh Snider, Tommy Painter, the Board of County Commissioner of Harper County, Mark Erwin, Beth Snell, and Crystal Stoddard were dismissed without prejudice pursuant to 28 U.S.C. § 1367 (c)(3). Ms. Meyer appealed and the Tenth Circuit Court of appeals reversed the summary judgment in favor of Shawn Stoddard, Josh Snider, and Tommy Painter on Ms. Meyer's First Amendment and Fourth

Amendment claims. It also reversed the court's dismissal of Ms. Meyer's state law claims and remanded the matter for further proceedings. Accordingly, the court now turns to the defendant Beth Snell's motion for summary judgment on Ms. Meyer's state law tort claims for civil conspiracy and intentional infliction of emotional distress.

## Analysis

**1.    Genuine issues of material fact preclude summary judgment on the plaintiff's claim for intentional infliction of emotional distress and her prayer for punitive damages.**

Beth Snell contends she is entitled to summary judgment on Ms. Meyer's claim for intentional infliction of emotional distress. She maintains that the uncontroverted facts establish that she engaged in no actions that could be considered so outrageous as to support such a claim. In order to succeed on a claim for intentional infliction of emotional distress (also known as the tort of outrage), a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (5) the resulting emotional distress was severe. Computer Publications, Inc. v. Welton, 2002 OK 50, 49 P.3d 732, 735; Estate of Trentadue ex rel. Aguilar v. U.S., 397 F.3d 840, 855-856 (10th Cir. 2005) (applying Oklahoma law). With respect to the second element, the defendant's conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. Computer Publications, Inc. at 735. Additionally, while "emotional distress includes all highly unpleasant mental actions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea," it is only where the emotional distress is extreme that liability arises. *Id.* at 736. The trial court is to act as the gate keeper

regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress. *Id.*

Although Ms. Meyer's brief in response to Ms. Snell's motion for summary judgment provides the court with only the barest remnants of facts, arguments, and authorities from which to piece together the substance of her allegations against Ms. Snell, the court concludes that she has alleged and offered some evidence to show that Beth Snell threatened her with the statement that "I'm going to get you put away," that she proceeded to call law enforcement, and that she falsely informed the defendant officers that Ms. Meyer had acted in a loud, aggressive, and threatening manner. She has also submitted evidence to suggest that Ms. Snell conferred with defendants Stoddard, Snider, and Painter, and with former defendant Officer Steve Wheaton immediately before the arrangements were made to transport Ms. Meyer to Western State. Ms. Meyer's evidence also indicates that officials relied upon Ms. Snell's third-party "voluntary statement" in determining to involuntarily detain Ms. Meyer.

Ordinarily, calling the police to report suspected wrongdoing does not constitute extreme and outrageous conduct sufficient to impose liability for intentional infliction of emotional distress. *See* Halbert v. City of Sherman, Tex., 33 F.3d 526, 529 (5th Cir. 1994) (calling police to falsely report that the plaintiff was intoxicated is not sufficiently outrageous to warrant damages for intentional infliction of emotional distress); Wright v. Montgomery Ward & Co., Inc., 814 F.Supp. 86 (D. Kan. 1993) (department store managers' report to police and initiation of criminal proceedings against cashier wrongly suspected of theft was not sufficiently intolerable to support a claim for intentional infliction of emotional distress). There is, however, no bright line rule that would definitively preclude any false report to a police officer from constituting extreme and outrageous conduct. *See* Annan-Yartley v. Honolulu

Police Dept., 475 F.Supp.2d (D. Hawaii 2007) (providing police with false information in order to cause plaintiff's arrest stated a claim for intentional infliction of emotional distress); *see also* Taiwo v. Vu, 822 P.2d 1024 (Kan. 1991) (defendant's conduct, which included lying to police and filing false police report against plaintiff, was sufficiently outrageous to support a claim for intentional infliction of emotional distress). Rather, the court must make its determination by considering the specific facts and circumstances of each case.

The court finds that when all material facts and supporting evidence in this case are viewed in the light most favorable to the plaintiff, reasonable minds can differ as to whether Beth Snell engaged in extreme and outrageous conduct. The court, therefore, finds that the claim for intentional infliction of emotional distress should be submitted to a jury and Ms. Snell's motion for summary judgment on the claim should be denied. Furthermore, because punitive damages are recoverable in an action for intentional infliction of emotional distress, *See* Floyd v. Dodson, 1984 OK CIV APP 57, 692 P.2d 77, and because reasonable minds could conclude that Ms. Snell's intentional conduct was malicious and oppressive, her motion for summary judgment on Ms. Meyer's prayer for punitive damages should also be denied.

**2.     The plaintiff's claim for civil conspiracy is not time barred.**

Ms. Meyer contends that Beth Snell engaged in a conspiracy with Mark Erwin, Shawn Stoddard, Josh Snider, and Tommy Painter to create false testimony and paperwork which led to Ms. Meyer's mental health commitment. Under Oklahoma law, a civil conspiracy is a combination of two or more persons to do an unlawful act or to do a lawful act by unlawful means. Clark v. Sloan, 1934 OK 574, 37 P.2d 263; Brock v. Thompson, 1997 OK 127, 948 P.2d 279. Unlike its criminal counterpart, civil conspiracy itself does not create liability. Brock at 294. Rather, the gist of a civil action for conspiracy is the damages, not the conspiracy. Clark at 266. It is the

underlying tort which gives rise to damages and the conspiracy only enables the plaintiff to recover against the tort-feasors jointly. Tripp v. English, 1916 OK 725, 158 P. 912, 913. In other words, a civil conspiracy claim merely "enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." Brock at 294, fn. 66. Thus, in Oklahoma, in order for civil conspiracy to lie, the claim must base itself on a valid, actionable underlying tort.

Beth Snell argues that the tort underlying Ms. Meyer's civil conspiracy claim is the tort of false imprisonment. Pursuant to 12 O.S. Supp. 2005 § 95 (4), a claim for false imprisonment must be brought within one year. Ms. Snell, therefore, moves for summary judgment in her favor on Ms. Meyer's civil conspiracy claim on the ground that the claim is time barred.

The plaintiff appears to admit that her claim would be time barred if the false imprisonment statute of limitations applies. She denies, however, that that is the case. Rather, she argues that a civil conspiracy is itself an actionable independent tort to which a two-year statute of limitations is applicable. She relies upon Tripp v. English, 158 P. 912, Clulow v. State of Okla., 700 F.2d 1291 (10th Cir. 1983), and Crosswhite v. Brown, 424 F.2d 495 (10th Cir. 1970) for the proposition that under Oklahoma law, claims for civil conspiracy are governed by the two-year statute of limitations found at 12 O.S. Supp. 2005 § 95 (3).

It appears that the plaintiff misconstrues her cited authorities. While the Oklahoma Supreme Court did apply a two-year statute of limitations to a claim for civil conspiracy in Tripp v. English, a review of that case reveals that the alleged conspiracy was one to defraud and that the court applied the statute of limitations applicable to fraud claims. Both Clulow v. State of Okla. and Crosswhite v. Brown, involved claims for conspiracy to violate the defendants' civil rights. Those cases arose under 42 U.S.C. § 1983 and the courts applied the two-year statute of limitations

governing claims for injuries to the rights of another not arising in contract, and not otherwise enumerated.

Because Ms. Meyer's conspiracy claim is not based on fraud and does not arise under § 1983, her cited authorities are inapposite. Additionally, because of her misinterpretation of Oklahoma law, Ms. Meyer fails to identify any independent tort underlying her conspiracy claim. The court finds that the claim may be construed as a claim for conspiracy to intentionally inflict emotional distress upon the plaintiff. The statute of limitations applicable to intentional infliction of emotional distress is two years. Green v. Johnson, 977 F.2d 1383, 1388 (10th Cir. 1992); Williams v. Lee Motor Freight, Inc., 1984 OK 64, 688 P.2d 1294, 1297-98. Therefore, to the extent the plaintiff's claim may be construed as a claim for civil conspiracy to intentionally inflict emotional distress upon the plaintiff, the court finds it was timely filed and Ms. Snell's motion for summary judgment should be denied.

## Conclusion

For all of the foregoing reasons, the motion for summary judgment filed January 5, 2004 by Beth Snell (docket entry no. 87) should be and hereby is DENIED with respect to the plaintiff's state law claims for civil conspiracy, intentional infliction of emotional distress, and punitive damages.

Dated this 22nd day of August 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

02-1691p027(pub).wpd