## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DEBORAH S. MEYER,                    )
                                     )
      Plaintiff,                 )
                                     )
vs.                                  )    Case No.  CIV-02-1691-F
                                     )
THE TOWN OF BUFFALO,                 )
OKLAHOMA, et al.,                    )
                                     )
      Defendants.                )

## ORDER

This matter comes before the court on the motion of the defendants Shawn Stoddard, Josh Snider, and Tommy Painter for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The matter has been fully briefed and upon due consideration of the parties' submissions, the court makes its determination.

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the opposing party must come forward with specific evidence demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## **Nature of the Case**

Viewed in the light most favorable to the plaintiff, the facts of this case are as follows.  The plaintiff, Deborah S. Meyer, had been romantically involved with Mark Erwin an employee of the Town of Buffalo.  The relationship ended less than amicably on or about May 10, 2001.  During their relationship, Mr. Erwin told Ms. Meyer that he was a "ten man" in the Ku Klux Klan, which he told her meant that he was an "enforcer" in the organization.  Erwin was frequently angry with Ms. Meyer. He also began expressing anger toward his sister, Beth Snell, and made threats against her.

On the night of Thursday, May 17, 2001, or the early hours of Friday, May 18, 2001, Ms. Meyer was physically assaulted outside her rural home when she stepped outside to investigate a noise.  She stated that she was "sucker punched" in the face with great force and knocked to the ground.  She alleges that her assailant was Mr. Erwin, but it is not clear when she first identified him as her attacker.  She did not report the attack immediately.

In the early morning hours of May 19, 2001, Ms. Meyer telephoned the Harper County dispatcher to report  trespassers on her property.  When Sheriff's Deputy Josh Snider arrived, she also tried to report the attack from the previous night.  Deputy Snider informed her that she would have to make her assault report in town.

On the evening of Saturday, May 19, 2001, Ms. Meyer drove into Buffalo, the county seat of Harper County,  to make the report.  On her way to the sheriff's office she spotted Mr. Erwin at a convenience store.  She confronted him and told him to stay away from her. Ms. Meyer continued on to the sheriff's office where she attempted to make an assault report to the dispatcher who served both the county sheriff's office and the city police department.  The dispatcher told her they didn't "do that" there.

Ms. Meyer then went to the home of the Buffalo police chief and informed him that the sheriff's office would not take her report. Even though Ms. Meyer's home where the attack occurred was some 18 miles out of town and so not in the jurisdiction of the Town of Buffalo, the police chief told her to go to the police station. He had an officer, defendant Steve Wheaton, meet her there. Officer Wheaton photographed Ms. Meyer's bruises and told her he would consult with the sheriff's office.

After leaving the police station, Ms. Meyer went to confront Mr. Erwin again. She drove to Wheatland Commodities, a Buffalo business owned by Mr. Erwin's sister, Beth Snell. Ms. Meyer knew that a family graduation party was being held there in honor of Mr. Erwin's niece. At Wheatland Commodities, Ms. Meyer confronted Mr. Erwin in the presence of his sister and her husband. She displayed her bruises and informed Mr. Erwin's family members that he had assaulted her. She then asked Mr. Erwin if he wanted to "finish what he'd started." She also announced that Mr. Erwin was an "enforcer" with the Ku Klux Klan and that he was planning to murder Beth Snell. Ms. Snell told Ms. Meyer that she was crazy and ordered her to leave. When Ms. Meyer refused, Ms. Snell warned that she would call for the authorities. At approximately 10:15 p.m., Ms. Snell called the sheriff's office to report that Ms. Meyer was "crazy" and refusing to leave her premises. Ms. Meyer says that she never became violent and never threatened violence during this verbal confrontation. Testifying in another proceeding, Beth Snell said that there had been no violence and no threats.

Officer Wheaton and Sheriff's Deputies Shawn Stoddard, Josh Snider, and Joe Painter arrived at the scene. Ms. Meyer was asked to wait in her vehicle and allowed Deputy Snider to escort her to her vehicle where she waited willingly and calmly while the other officers took statements from Mr. Erwin and the Snells. None of the officers attempted to take any sort of statement from Ms. Meyer or to ask her any

questions.  It was decided that an emergency order of detention for psychiatric evaluation should be sought.  The record is unclear as to how this decision was made and by whom.  Deputies Stoddard, Snider, and Painter argue that they did not cause or contribute to the detention.

At some  point,  Deputy Stoddard left the scene and placed a call to Western State Psychiatric Center  ("Western State").  He returned and informed Officer Wheaton that Western State staff advised that Ms. Meyer could be brought in for examination.  Ms. Meyer maintains that from the time the officers arrived until they handcuffed her and took her away, a span of about one hour, she had been calm and cooperative.  The unsworn "Peace Officer's Affidavit for Emergency Detention" by Officer Wheaton, which is included in the Western State records, makes no mention of any violence or threats by Ms. Meyer, or of any resistance.  Officer Wheaton's written statement refers to "affidavits" of other witnesses (apparently referring to written statements given by Beth Snell, Mark Erwin, and Leon Snell, who also had been present at Wheatland Commodities) as additional sources of information to support the necessity of emergency detention, but those statements similarly make no mention of acts or threats of violence by Ms. Meyer.

Ms. Meyer was taken to Western State, where she arrived in the custody of Wheaton, Snider, and Painter just before midnight.  There is considerable dispute regarding the affidavits and reports provided to Western State by the defendant officers.  Ms. Meyer's medical file contains only Officer Wheaton's statement (which was styled an affidavit but not notarized), and other unsworn statements of the officers.

Despite evidence that Ms. Meyer had neither acted violently nor threatened violence and that she never resisted the defendant officers, Western State's admitting physician, Jennifer Morris, M.D., noted in her reports that Ms. Meyer had

"apparently" threatened violence and required four officers to restrain her. There is no such information in the written reports submitted by the defendant officers. A subsequent note from Dr. Morris states that she was unable to "find the entirety of the written police officer material" she reviewed in connection with Ms. Meyer's detention. Two persons on duty at Western state at the time of Ms. Meyer's admission were related to a law enforcement defendant.        After examining Ms. Meyer, Dr. Morris concluded that she had "the desire to harm" Mr. Erwin and that she might do so if she were not detained until she could regain her impulse control. Ms. Meyer was admitted to Western State. She was released the following Monday, May 21, two days after her admission to Western State

Ms. Meyer filed this action against Officer Wheaton, Deputies Stoddard, Snider and Painter, the Town of Buffalo, and the Board of Commissioners of Harper County (the "Board"), pursuant to title 42, § 1983 of the U.S. Code, for violation of her rights under First, Fourth, and Fourteenth Amendments to the United States Constitution. She also brought an array of state law tort claims against those defendants as well as against Mark Erwin, Beth Snell and Crystal Stoddard, a hospital clerk. On March 3, 2004, this court entered its order granting summary judgment in favor of Steve Wheaton, the Town of Buffalo, Shawn Stoddard, Josh Snider, Tommy Painter, and the Board of County Commissioners of Harper County with respect to all of Ms. Meyer's constitutional claims. Because that order resolved all of the plaintiff's federal law claims, her state law claims against Steve Wheaton, the Town of Buffalo, Shawn Stoddard, Josh Snider, Tommy Painter, the Board of County Commissioner of Harper County, Mark Erwin, Beth Snell, and Crystal Stoddard were dismissed without prejudice pursuant to 28 U.S.C. § 1367 (c)(3). Ms. Meyer appealed and the Tenth Circuit Court of Appeals reversed the summary judgment in favor of Shawn Stoddard, Josh Snider, and Tommy Painter on Ms. Meyer's First Amendment and Fourth

Amendment claims.  It also reversed the court's dismissal of Ms. Meyer's state law claims and remanded the matter for further proceedings.  Accordingly, the court now turns to the motion for summary judgment filed by Shawn Stoddard, Josh Snider, and Tommy Painter with regard to  Ms. Meyer's state law tort claims for false imprisonment, abuse of process, civil conspiracy, and intentional infliction of emotional distress.

## Analysis

Shawn Stoddard, Tommy Painter, and Josh Snider (herein referenced collectively as the "defendants") contend they are not proper parties under the applicable provisions of the Oklahoma Governmental Tort Claims Act (the "Tort Claims Act"), 51 O.S. 2001 & Supp. 2006 § 151 *et seq.*  Ms. Meyers agrees that to the extent that these defendants acted within the scope of their employment, her action would lie against Harper County.  She asserts, however, that the defendants' actions giving rise to her state law tort claims by their very nature fall outside the defendants' scope of employment.  Thus, the Tort Claims Act does not protect the defendants from her claims against them in their individual capacities.

Ms. Meyer's claim against the defendants for false imprisonment arises  from their having detained her in her pickup truck at Wheatland Commodities and from their having then taken her into protective custody and assisted in her transport and admission to Western State.  Her claim for abuse of process arises from the defendants' " refusing to take a report, then making false reports to ensure that [she] would be detained on an emergency basis as a person who was mentally ill and in need of immediate treatment."  *See* First Amended Complaint at ¶¶ 65-66.  Her claim for intentional infliction of emotional distress arises from the defendants having "engaged in actions which were intended and did inflict severe emotional distress to the plaintiff."  *Id.* at ¶69.  Her claim for civil conspiracy arises from the defendants

having "engaged in a concerted purpose, i.e., to create false paperwork and false testimony and to take Meyer into protective custody and transport her to a psychiatric facility all to ensure that Meyer would be determined to be mentally ill and in need of immediate treatment such that she would be admitted to a psychiatric facility and would stop her attempts to have charges brought against Mark Erwin for physically assaulting her."  *Id.* at ¶ 72.

1.      **Civil Conspiracy Claim**

The court will first examine Ms. Meyer's claim for civil conspiracy because it appears to encompass all of her state law tort claims against the defendants.  To succeed on a civil conspiracy claim under Oklahoma law, a plaintiff must show that two or more persons acted in concert to accomplish an unlawful objective.  Dill v. City of Edmond, Okl., 155 F.3d 1193, 1208 (10th Cir. 1998).  When a conspiracy is shown to have existed, each of the conspirators is responsible for the acts of his co-conspirators done in furtherance of such conspiracy.  Blasdel v. Gower, 1918 OK 322, 173 P. 644, 645.

The defendants argue that Ms. Meyer's civil conspiracy claim is without merit because she has failed to present evidence that they conspired in and performed an unlawful act.  The court finds that Ms. Meyer has produced evidence tending, if credited, to show that the defendants conferred with others including Officer Steve Wheaton and Beth Snell who had threatened to have Ms. Meyer "put away." She has also presented evidence that the defendants agreed to detain Ms. Meyer out of earshot for over an hour while they conferred and took witness statements.  She has offered evidence to suggest that the defendants concluded along with Officer Wheaton that something should be done to "help" Ms. Meyer.  She has produced evidence to show that Shawn Stoddard telephoned Western State and provided information to a

physician there in advance of Ms. Meyer's transport to Western State. She has offered evidence to show that Tommy Painter prepared a false statement that was at some point provided to Western State in support of Ms. Meyer's emergency detention. She has offered evidence to show that on the night preceding her detention, Josh Snider was unusually reluctant to accept and pursue her complaint alleging that she had been assaulted by Mark Erwin, that Mr. Snider and the other defendants were long-time friends with Mark Erwin, and that that friendship created a motive for the defendants to protect him from criminal charges. She has presented evidence that Shawn Stoddard falsely informed his wife, Crystal Stoddard, the dispatcher for both Harper County and the Town of Buffalo, that Ms. Meyer had behaved violently, requiring three or four officers to constrain and bring her in, and that Crystal Stoddard relayed that information to Western State. Finally, she has presented evidence that certain false paperwork may have been intentionally removed from Western State's files.

The Supreme Court has stated that in considering a summary judgment motion, the evidence must be considered "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 253. Under Oklahoma law, a claim for conspiracy must be supported by clear and convincing evidence. Dill, 155 F.3d at 1207. Consequently, in determining whether a genuine issue as to a material fact exists, the court must decide whether plaintiff's evidentiary showing would suffice when evaluated on the basis of the clear-and-convincing-evidence standard. To prevail on their summary judgment motion, the defendants must demonstrate that Ms. Meyer has not presented evidence which, under the higher standard of proof, would support a jury finding that defendants engaged in a conspiracy. Certainly much of Ms. Meyer's evidence is circumstantial. Ordinarily, however, the law permits "great latitude" in the admission of circumstantial evidence

tending to establish a conspiracy and the defendant's connection therewith.  *See* <u>Felt v. Westlake</u>, 1918 OK 360, 174 P. 1041, 1045 (Okla. 1918).  The court concludes that even applying a clear-and-convincing evidentiary standard, Ms. Meyer has presented sufficient evidence, if believed, to establish the existence of a conspiracy and the defendants' participation in that conspiracy.  The defendants' motion for summary judgment on Ms. Meyer's conspiracy claim should, therefore, be denied.

**2.      False Imprisonment Claim**

Many of the facts supporting her conspiracy claim also serve to support Ms. Meyer's claim for false imprisonment.  False imprisonment, under Oklahoma law, is the unlawful restraint of an individual's personal liberty or freedom of locomotion against his will.  <u>S.H. Kress & Co. v. Bradshaw</u>, 1948 OK 70, 99 P.2d 508, 511.  Ms. Meyer has offered evidence to show that her liberty was restrained while she was kept waiting in her vehicle for over an hour while the defendants investigated Beth Snell's complaint and then while she was transported to and ultimately admitted to Western State.  She has also offered evidence from which a reasonable trier of fact could find that all three defendants were involved in the decisions leading to the deprivation of her liberty.

The defendants assert that Ms. Meyer's detentions cannot support a false imprisonment claim because they had probable cause to detain her.  It is the plaintiff's burden to show lack of probable cause.  <u>Irwin v. SWO Acquisition Corp.</u>, 1992 OK CIV APP 48, 830 P.2d 587, 590.  Here, the plaintiff has offered evidence to show that she voluntarily withdrew to her vehicle accompanied by Josh Snider.  She has offered evidence showing that she was never violent or threatening while she was being detained in her vehicle or after she was taken into protective custody.  From this evidence, a reasonable jury could find that the defendants had no probable cause to

detain Ms. Meyer. The court, therefore, concludes that genuine issues of material fact preclude summary judgment in the defendants' favor on the plaintiff's false imprisonment claim.

**3.     Abuse of process claim**

Under Oklahoma law, the elements of an abuse of process claim are: 1) the improper use of the court's process; 2) primarily for an ulterior or improper purpose; 3) with resulting damage to the plaintiff. Callaway v. Parkwood Village, L.L.C., 2000 OK 24, 1 P.3d 1003, 1004. The defendants appear to challenge the first element of Ms. Meyer's claim. They maintain that Ms. Meyer's abuse of process claim is untenable because "neither Stoddard, Snider or Painter were involved in any events after Plaintiff was arrested, with the exception of Snider's mere riding in Officer Wheaton's patrol car." While an abuse of process claim focuses primarily upon acts occurring after process issues, it appears that Ms. Meyer's abuse of process claim should be viewed in light of her conspiracy claim. She is evidently basing her abuse of process claim against the defendants not solely upon their own acts, but upon the acts of others, including Officer Steve Wheaton, as well. The court finds there are genuine issues of material fact precluding summary judgment on Ms. Meyer's abuse of process claim.

**4.     Intentional Infliction of Emotional Distress**

The defendants contend they are entitled to summary judgment on Ms. Meyer's claim for intentional infliction of emotional distress because she has failed to present any evidence that they engaged in extreme and outrageous conduct. In order to succeed on a claim for intentional infliction of emotional distress (also known as the tort of outrage), a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the

defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. Computer Publications, Inc. v. Welton, 2002 OK 50, 49 P.3d 732, 735; Estate of Trentadue ex rel. Aguilar v. U.S., 397 F.3d 840, 855-856 (10th Cir. 2005) (applying Oklahoma law). With respect to the second element, the defendant's conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. Computer Publications, Inc. at 735. Additionally, while "emotional distress includes all highly unpleasant mental actions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea," it is only where the emotional distress is extreme that liability arises. *Id.* at 736. The trial court is to act as the gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress. *Id.*

Although Ms. Meyer has provided only a skeletal outline of her claim, the court concludes that she  has alleged and offered some evidence to suggest that the defendants conspired with Beth Snell who had recently threatened to have Ms. Meyer "put away," and with Officer Steve Wheaton, to falsely inform Western State that Ms. Meyer had been violent and uncontrollable, all in an effort to have her detained for an unnecessary mental health evaluation.

The court finds that when all material facts and supporting evidence in this case are viewed in the light most favorable to the plaintiff, reasonable minds can differ as to whether the defendants engaged in extreme and outrageous conduct. The court, therefore, finds that the claim for intentional infliction of emotional distress should be submitted to a jury and the defendants' motion for summary judgment on that claim should be denied.

-11-

The defendants have also argued that they are entitled to summary judgment on Ms. Meyer's claim for punitive damages arising from the state law tort claims. Punitive damages are recoverable in actions for civil conspiracy, false imprisonment, abuse of process, and intentional infliction of emotional distress.  *See* North Texas Production Credit Ass'n v. McCurtain County Nat. Bank, 222 F.3d 800 (10th Cir. 2000) (conspiracy); Moore v. Target Stores, Inc., 1977 OK CIV APP 35, 571 P.2d 1236, 1240-41(false imprisonment and malicious prosecution);  Floyd v. Dodson, 1984 OK CIV APP 57, 692 P.2d 77 (intentional infliction of emotional distress). Because reasonable minds could conclude that the defendants' intentional conduct was malicious and oppressive, their motion for summary judgment with regard to Ms. Meyer's prayer for punitive damages should also be denied.

## Conclusion

For all of the foregoing reasons, the motion for summary judgment filed January 5, 2004 by Shawn Stoddard, Josh Snider and Tommy Painter (docket entry no. 90) should be and hereby is DENIED with respect to the plaintiff's state law claims.

Dated this 22nd day of August 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

02-1691p028(pub).wpd